Windsor,
February,
1841.

Cummings &
Manning
v.
Fullam.

In an action on book, it is competent for the plaintiff, before the auditors, to prove that sundry items of his account were charged in the hand writing of persons who were, at the time of making such charges, in his employment as clerks, such persons not being produced as witnesses, though still living.

On exceptions, by one of the parties, the court cannot revise a decision of the county court against the other party, which was not made the ground of *exception*.

Upon the assignment of a book account, for a valuable consideration, and notice to the defendant, he cannot avail himself of an account which accrued against the assignor, after the assignment and notice, as a defence in a suit by the assignee, in the name of the assignor, to enforce payment of the account which had been assigned.

THIS was an action of book account wherein judgment to account was rendered in the county court, and auditors were appointed, who afterwards made their report, from which it appeared that the plaintiffs' account, as charged, amounted to $369.67, but, as adjusted and allowed by the

auditors, was reduced to $138,47, and they computed the interest thereon at $49,01.

WINDSOR,
February,
1841.

Cummings &
Manning
v.
Fullam.

The defendant's account, as presented by him, amounted to $664.73, but, as adjusted by the auditors, was reduced to $196.98, and, on that sum, the auditors allowed $22,72, interest, leaving a balance of $32.22, due the defendant, which sum the auditors allowed as the balance due from the plaintiffs to the defendant, subject to the opinion of the court upon the following statement of facts.

One hundred and twenty-seven dollars of the defendant's account accrued after April, 1837, at which time the firm of Cummings & Manning was dissolved, and the defendant had knowledge of the dissolution at the time it took place ; and since then the plaintiffs have never been co-partners in any business. The items, making the sum last mentioned, were for defendant's professional services as an attorney and counsellor at law, in defending certain suits against the plaintiffs. Manning, one of the plaintiffs, was opposed to any defence being made in said suits, and refused to employ counsel to defend them, and the defendant was employed by Cummings, the other plaintiff. If the court should be of the opinion that the defendant had no right to charge the firm of Cummings & Manning for these services, then the auditors found that said sum of $127, with $11.42 interest thereon, should be deducted from the defendant's account, and that a balance of $106.20, was due from the defendant to the plaintiffs.

The auditors further found, that, on the seventh of June, 1837, the plaintiffs assigned to Daniel Perry, for the benefit of their creditors, all their right and interest in and to their present claim against the defendant, as well as all other property and estate to them belonging, of which assignment the defendant had notice at the time when it was made and executed.

If the court should be of the opinion that the defendant had a legal right to charge the firm of Cummings & Manning, after the dissolution of their partnership in April, 1837, but had no legal right to have such charges applied in payment of or in offset to the plaintiffs charges made previous to said assignment, then the auditors found for the plaintiffs

to recover of the defendant the sum of seventy-seven dollars and fifty-eight cents, to balance book accounts.

It appeared, on the trial before the auditors, from testimony introduced by the plaintiffs, that many of the charges to the defendant, in the plaintiff's book, were in the hand writing of persons, who were clerks to the plaintiffs, when the charges were made, and that such clerks were out of the state at the time of the trial, and for a long time previous thereto. The defendant objected to the admission of testimony proving these facts, but the auditors overruled the objection.

The defendant objected to the acceptance of said report, and assigned the following causes.

1. That the auditors reported that the co-partnership of Cummings & Manning was dissolved in [April, 1837, when no testimony was given before the auditors to that effect.

2. That the auditors had not reported on a question to which testimony was given, although requested so to do by the defendant, viz. the fact that the defendant was retained to render the services, charged in his account, before the failure of Cummings & Manning.

3. That the auditors erred in admitting proof of the hand writing of those who had been clerks to the plaintiffs, said clerks not being dead.

And the defendant introduced the affidavits of several witnesses, to prove the first objection, who severally testified, in substance, that they had, for many years, resided in Ludlow, where the plaintiffs did business as partners, and that they never heard of any dissolution of said partnership; except that the plaintiffs failed and made an assignment of their property.

The affidavits of P. T. Washburn and the defendant were also read by the defendant.

P. T. Washburn testified that he was counsel for the defendant at the hearing before the auditors, and that he had no knowledge or recollection that any testimony was there introduced to show that the co-partnership of Cummings & Manning had ever been dissolved, nor was any point made respecting it by either party.

The defendant testified, in substance, that he and another person testified before the auditors to the facts stated in the second objection, and that there were credits to him on the

plaintiffs books, to a considerable amount, which the auditors had not reported. He further testified that he had applied to J. S. Marcy, chairman of said auditors, to amend said report in these particulars; that said Marcy declined so doing, unless the plaintiffs consented thereto; that he (the defendant) had also applied to the counsel for the plaintiffs to consent to such amendment, and that they refused their consent thereto.

He also testified that he did not understand that any testimony was given before the auditors to prove the dissolution of the partnership between the plaintiffs, nor did he understand that any question was made before the auditors in relation thereto; that he never knew nor heard of such dissolution, otherwise than that they failed in business in April, 1837, and, in June, 1837, made an assignment of their effects, as stated in the auditors report.

After an examination of said report and affidavits, the county court accepted said report, and rendered judgment thereon for the plaintiffs to recover against the defendant seventy-seven dollars and fifty-eight cents and their costs, to which decision the defendant excepted.

*S. Fullam, jr.* and *P. T. Washburn,* for defendant, contended that the auditors erred in admitting testimony of the hand writing of the persons who had been clerks to the plaintiffs, as they were still living, and to this point, cited, *Lord Torrington's* case, 1 Salk. 285; *Clark* v. *Bedford,* Bul. N. P. 282; *Harrison* v. *Blades,* 3 Camp. 457; *Cooper* v. *Marsden,* 1 Esp. 1; *Kennedy* v. *Fairman,* 1 Hayw. 458, cited in Phil. Ev. 195, (n);—that only in cases where a witness had become insane; (*Union Bank* v. *Knapp,* 3 Pick. 96,) or had absconded, and on diligent enquiry no trace of him could be discovered, (13 Pick. 468,) could the testimony of the clerk himself be dispensed with to prove the entries; that the case of *Cooper* v. *Marsden* (where the clerk was in the East Indies) is alluded to without disapprobation in 15 Mass. 386, and 5 Vt. R. 316, and is sustained in Phil. Ev. 195–6, and Bull. N. P. 282.

They also insisted that the auditors erred in not reporting the credits on the plaintiffs' books; (*Reed* v. *Barlow,* 1 Aik.

Windsor,
February,
1841.

Cummings &
Manning
*v.*
Fullam.

WINDSOR,
*February,*
1841.

Cummings &
Manning
*v.*
Fullam.

145,) and also, in not reporting, as requested, the facts stated in the second objection to their report.

They also contended that, there being, in fact, no dissolution of the partnership between the plaintiffs, the defendant, having been employed by one of the firm to defend suits, had a right to charge the firm for his services.

They further insisted that the defendant, having been retained previously to the failure of the plaintiffs and their assignment to Perry, had a right, notwithstanding the assignment, to offset his account against the plaintiffs until expressly notified by the assignee that the latter would claim the whole amount due from the defendant at the time of the assignment ; that the report does not show that the *assignee* ever gave any notice to the defendant, and that the auditors were not authorized to find that the defendant had notice, unless the notice came from the assignee.

The only ground upon which the equitable interests of assignees have ever been protected, is, a sale for a valuable consideration and notice. *Newell* v. *Adams*, 1 D. Chip. 346. *Strong* v. *Strong*, 2 Aik. 373, and the statute of 1798, Slade's Comp. L. 144, provides for offset until notice is given.

*Tracy & Converse* and *C. French*, for plaintiffs, contended—

1. That a *bona fide* assignment of a chose in action, and notice to the debtor, defeats any claim the debtor may have against the assignor, not existing at the time of such assignment, and that the law governing this case and the case of an assignment of a promissory note were the same. 3 Vt. R. 540. 11 id. 204. 1 Sw. Dig. 433-4.

2. That the defendant was not only precluded, by the assignment, from filing his account in offset, which accrued subsequently thereto, but also by the additional fact of the dissolution of the copartnership. Upon this point the county court erred in allowing any charges made by the defendant after the dissolution, and should have rendered judgment in favor of the plaintiffs for the sum of $106,20 instead of $77,58, the difference being the items for services after the dissolution and before the assignment ; and, on this point, they relied upon the report of the auditors, finding that

there had been a dissolution and notice thereof to the defendant, and the decisions of our courts on similar questions. 'One partner, after the dissolution of the part-'nership, cannot charge the firm with any debt which they 'did not owe before the dissolution.' 3 Vt. R. 104.

3. That the auditors correctly admitted proof of the hand writing of the plaintiffs' former clerks, who were absent at the time of the trial before the auditors. It is a rule of constant practice, that, in the absence of a subscribing witness to a deed, will, or other sealed instrument, his hand writing may be proved by those acquainted with it. 1 Sw. Dig 757. 4 Johns. 466. The reason is stronger for admitting such testimony to prove charges upon a party's books. The book is the essential part of the evidence, in book actions, and the oath of the party and other testimony is only supplementary to it. Swift's Ev. 81.

4. 'Auditors are properly the judges of the weight of 'testimony heard by them, and their opinion upon it cannot 'be made the ground of an exception.' *Wood* v. *Barney,* 2 Vt. R. 369. 5 Vt. R. 546.

The opinion of the court was delivered by

BENNETT, J.—It is objected by the defendant, that the auditors erred in permitting the plaintiffs to prove that sundry items of their account were charged in the hand writing of persons who were, at the times of the several charges, their clerks, and who were not produced, as witnesses, at the trial, though still living, for aught that appeared, but out of the state. This objection is unsound.

In the book action, the books of the parties are evidence for or against them, according to their appearance and the regularity with which they are kept, and their freeness from alterations or erasures, and their weight with the triers must depend very considerably upon their manner of being kept. Our law has given the adverse party the right to claim the production of the original books. If it appeared, as in this case, that some of the items were not in the hand writing of the plaintiffs, it was a natural inquiry, who made such charges? If the hand writing was not known, or if the entries appeared to have been made by a person who was never known to have been in the employment of the party, it would detract from the

WINDSOR,
*February,*
1841.

Cummings &
Manning
*v.*
Fullam.

WINDSOR,
*February,*
1841.

Cummings &
Manning
*a*
Fullam.

weight, which the triers might otherwise give to the books. It was, then, manifestly proper to permit the plaintiffs to show who those persons were that made the charges ; that they were in the plaintiffs' employment, and that it was their appropriate business to deliver such property as is charged, and make the proper entries. This would serve to give character to the books, and necessarily tend to establish the plaintiffs' account. So far then as the books themselves are concerned, it must have been admissible, as having a bearing upon their character. Had this been an action in which the books of the party were not evidence, it would have been otherwise.

It seems that the plaintiffs dissolved their partnership in April, 1837, and that, between that time and the 7th of June, following, when the plaintiffs assigned to Daniel Perry, for the benefit of their creditors, not only this account against the defendant, but all other claims, Mr. Fullam defended certain suits brought against the plaintiffs, and charged his fees to the firm.

The auditors find that Manning was opposed to making any defence to those suits, and refused to employ counsel to defend them, and that the defendant was employed by Cummings, *individually,* though it does not appear that the defendant had any notice of the determination of Manning in this respect. Under such a state of facts, it might be questionable, whether the defendant was entitled to have had such items in his account allowed against the firm. The county court, however, did allow them, and there is no exception to this, on the part of the plaintiffs. We cannot, therefore, revise the decision of the county court in this particular.

We think the county court were right in disallowing all that portion of the defendant's account which accrued after the assignment of the plaintiffs' claims to Perry.

The auditors find that Fullam had notice of the assignment at the time it was made, and it has long been settled, in this state, that courts of law will protect the rights of the assignee to a chose in action after notice. The assignment to Perry, being *bona fide,* is valid, though made in trust and for the benefit of the creditors of the assignors.

The defendant, after such assignment and notice, cannot

offset his account accruing subsequently thereto. To per-
mit it, would be to defeat the rights of the assignee, which
we are bound to protect.

The judgment of the county court is affirmed.